701 A.2d 1322

G.H. DURRENBERGER AND TORRY LYNN DURRENBERGER,
PLAINTIFFS–APPELLANTS, v. BERNARD J. FERRIS AND
LITTLE RICCI'S, INC., T/A FERRIS CAFE, DEFENDANTS–
RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 21, 1997—Decided November 10, 1997.

Before Judges LONG, STERN and KIMMELMAN.

*Chad R. Williams* argued the cause for appellants (*DeMasi & DeMasi,* attorneys; *Mr. Williams,* on the brief).

*Thomas M. Reardon, III* argued the cause for respondents (*Bolan Jahnsen,* attorneys; *Daniel S. Jahnsen,* on the brief).

The opinion of the court was delivered by

KIMMELMAN, J.A.D.

Plaintiff G.H. Durrenberger [1] appeals both from the entry of a judgment of no cause of action in his personal injury action, and

---

[1] Plaintiff's wife Torry Lynn Durrenberger has joined the action in her derivative capacity.

from the denial of his motion for a new trial on the ground that the jury's verdict was inconsistent.

Plaintiff and his wife were patrons at the premises of defendant Ferris Cafe. At closing time, approximately 1:45 a.m., plaintiff was instructed by defendant Ferris not to exit from the cafe through the front door, which had been locked, but to exit through the side door. Plaintiff believed the side door led to a vestibule and then to the outside. When he reached the side door which he believed to be the exit that he had been instructed to use, he opened it and reached inside for a light switch. In so doing, he lost his balance, fell into the basement of the cafe, and was injured. Plaintiff claims that there were no markings or signs on the door to indicate that it was a basement door rather than an exit. Plaintiff brought suit against defendant for damages for the injuries he sustained when he fell.

At the conclusion of the testimony and summations of counsel, the trial judge instructed the jury as to the principles of comparative negligence and submitted to the jury special interrogatories relating to whether defendants or plaintiff were negligent and whether their negligence was a proximate cause of the accident. If the jury were to find that the negligence of both parties was a proximate cause of the accident, the trial judge instructed that they were to determine the percentage of negligence of each. The relevant portion of the court's instructions were as follows:

[I]f you find negligence on the part of both the plaintiff and the defendant, then you must come up with percentages that total 100 percent.

This question asks you to compare the negligence of each party with respect to the happening of the accident which should be reflected in percentage figures ranging from one percent to 99 percent. The combined negligence of all parties, as I said, would be 100 percent. This question is only to be answered when the answer to the first question, number one and number two, is yes.

The next question on comparative negligence has to do with damages and that— we get to question number four. If you determine that the defendant was solely negligent or that both parties were negligent and that becomes your duty to determine the amount of money, if any, to be awarded to the plaintiff.

We note at the outset that the last quoted paragraph of the court's instructions was obviously confusing or misleading on the

issue of damages. A reading of the instruction could lead the jury to award damages without regard to the comparative percentages of negligence attributed to the parties. Omitting some words not pertinent, the jurors were instructed: "If you determine ... that both parties were negligent ... that becomes your duty to determine the amount of money, if any, to be awarded to the plaintiff."

The jury's answers to the special interrogatories indicate that both parties were negligent. Plaintiff's negligence was found to be sixty percent and defendants' negligence was found to be forty percent. Perhaps with the confusing instruction in mind, the jury went further and answered the next interrogatory, which awarded damages of $12,000 to plaintiff. The finding that plaintiff was principally negligent accompanied by an award of damages to him is the inconsistency urged by plaintiff as grounds for a new trial. Defendant, on the other hand, argues that the verdict was reasonable and should be sustained.

Both parties recognize that an "ultimate outcome" charge was not given to the jury. Such charge, in the words of the Model Jury Charges—Civil, would have instructed the jury as follows:

In order for the plaintiff to recover against any defendant, plaintiff's percentage of negligent conduct must be 50% or less. If the plaintiff's percentage is more than 50%, he/she will not recover damages at all and your deliberations are concluded and you should not make any determination as to damages. A plaintiff whose percentage is 50% or less will recover from any defendant whose negligent conduct you have found was a proximate cause of the accident....

I will explain to you the effect of your allocation of percentages. In order for the plaintiff to recover against any defendant, plaintiff's percentage of negligent conduct must be 50% or less. · If the plaintiff's percentage is more than 50%, he/she will not recover damages at all, and your deliberations are concluded. You should not then make any determination as to damages.

A plaintiff whose percentage is 50% or less will recover from any defendant whose negligent conduct was a proximate cause of the accident. However, the Court will reduce his/her recovery by that percentage you find measures the plaintiff's contribution to the happening of the accident. The allocation you make among the defendants will determine how much of the plaintiff's damages they will pay.

[*Model Jury Charges (Civil)*, 8.21, "Comparative Negligence: Ultimate Outcome," (1996).]

■ Had an instruction explaining the ultimate outcome of findings with respect to the percentages of negligence been given in this case, one would expect that a duteous jury would have gone no further after finding the applicable percentages, and would not have awarded damages. In the absence of such an explanatory instruction, the jury here did go further and did award damages. Under these circumstances, we conclude that the verdict was unreliable and should not have been molded into a no-cause verdict by the trial court.

■ It is important that a jury be informed of the consequences of their findings as to percentages of negligence. They should be made aware of the ultimate outcome of their findings, because that may very well have an influence on their determination of those percentages. We do not assume that a jury would, or should, arrive at percentages of negligence in a vacuum. *Fischer v. Canario,* 143 *N.J.* 235, 251, 670 *A.*2d 516 (1996); *Roman v. Mitchell,* 82 *N.J.* 336, 345, 413 *A.*2d 322 (1980). They are obliged to take all circumstances of the case into account and should be aware of the consequences of their findings. That principle was articulated as follows in *Roman v. Mitchell:*

> We conclude that, ordinarily, a jury informed of the legal effect of its findings as to percentages of negligence in a comparative negligence trial is better able to fulfill its fact finding function. Hereafter, an ultimate outcome instruction should be given to a jury in such a trial. However, in a complex case involving multiple issues and numerous parties, the trial court, in the exercise of sound discretion, could withhold the instruction if it would tend to mislead or confuse the jury.
>
> [*Roman, supra,* 82 *N.J.* at 346–47, 413 *A.*2d 322.]

There is no suggestion that this is a complex case involving multiple issues and numerous parties.

■ We read *Roman v. Mitchell,* as this court did in *Burdzy v. Cooney,* 215 *N.J.Super.* 98, 104, 521 *A.*2d 364 (App.Div.1987), to require that an ultimate outcome charge be given in comparative negligence cases. In *Burdzy,* an ultimate outcome charge was given, but, notwithstanding its finding that plaintiff's share of comparative negligence was more than fifty percent, the jury went on to award damages to plaintiff. We therefore ordered a new

trial as to damages, concluding that an assessment of damages following a finding which absolves defendant of negligence renders the verdict unreliable.

Based upon our careful review of the record submitted and the arguments of counsel, we are satisfied that the verdict rendered July 31, 1996, was inconsistent. The judgment rendered thereon is reversed.